No. 14,436.

SMITH *v.* STAPLETON, Mayor of Denver.

(100 P. [2d] 162)

Decided March 4, 1940.

Mr. LEWIS DER. MOWRY, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, who was petitioner below, brought a mandamus action against certain officials and the members of the civil service commission of the City and County of Denver to reinstate her as police matron of the city jail; to include her name in the classified civil service list; and praying that the auditor of the City and County of Denver be commanded to issue to her warrants in payment for services from the 1st day of April, 1936, at the rate of One Hundred and Fifty Dollars per month; and for such other and further relief as to the court should seem meet and proper. At the close of the evidence for petitioner, on motion of respondents, judgment of nonsuit was duly entered. In an attempt to reverse this judgment, petitioner has sued out a writ of error. Reference will be made to the parties as they appeared below, namely, as petitioner and respondents.

The assignments of error may be comprehended in the general proposition that the court erred in sustaining respondents' motion for nonsuit, which is predicated upon petitioner's alleged civil service status under the charter of the City and County of Denver.

The chronological events relative to petitioner's employment were as follows: She was appointed head matron of the county jail in 1919, and was transferred from the county jail to the city jail about July 20, 1924 as a provisional employee—police matron—together with a Mrs. Frincke and a Mrs. Armstrong, Mrs. Frincke's

daughter-in-law, acting as relief matron. January 20, 1925, she received a certificate (Exhibit A) reading as follows:

"No. 2173

"Office of the Manager of Safety and Excise, City and County of Denver.

"To all to whom these presents shall come, Greeting:'

"That, having confidence in the ability, sobriety and integrity of Mrs. Mattie L. Smith, I, the Manager of Safety and Excise of the City and County of Denver, do by these presents constitute and oppoint him [her], the said Mrs. Mattie L. Smith of the City and County of Denver, to the office of Police Matron to have and to hold said office under the Rules and Regulations of the Civil Service Commission of the City and County of Denver, with full pay as provided by the rules and regulations of said Commission for duty as Police Matron.

"Done at the City and County of Denver, this 20th day of January, A.D. 1925.

"R. W. Hershey,
"Manager of Safety and Excise.
"Approved: J. W. Kelley
"President Civil Service Commission.
"Attest: C. W. Lewis
"Attest: Chas. W. Cochran
"Secretary Civil Service Commission."

She continued in her employment thereunder receiving compensation in the sum of $150.00 a month until September 1, 1931, when, after a change in the city administration, she was dismissed as an employee of the police department, not under the classified service. She appealed to the civil service commission without success, but upon exhibiting her certificate, Exhibit A, to the new mayor, she was reinstated as a temporary matron to replace matron Frincke, who was eligible for retirement. She received $125 a month as salary until 1936, when, following another change in the city administration, she was discharged without a hearing.

Meanwhile, the exact time not appearing, an examination had been held by the civil service commission and an eligible list for the position of police matron established. A Mrs. Norris, who had taken the examination, was appointed to that position from this list.

Petitioner admits that she never took an examination to qualify for the position, and did not appeal to the civil service commission from the action of the city officials on the occasion of her last discharge. It is conceded by the respondents, however, that if she was a member of the police department under the classified service, her discharge was unlawful. Petitioner says she was advised that she was too old and was, therefore, ineligible to take the examination. Her counsel on this point simply say that the commission had no right to set an age limit for taking examinations, but cite no authority supporting that assertion; however, since the reasonableness of the rules of the commission are not made an issue in the case, we do not pass upon that question.

Petitioner relies on sections 232 and 234 of the charter which read, respectively, as follows:

"232. Provisional appointments. (Section 198) In cases where the commission is unable to comply with the requisition from the eligible list, it may allow a provisional appointment, or it may authorize the appointing power to select a suitable person who shall be subject to examination, and if found qualified, certified for appointment."

"234. Appointments for six months—Permanent appointment. (Section 200) Every original appointment in the classified service shall be for six months, at the end of which time, if the conduct and capacity of the person appointed have been satisfactory, he shall be permanently appointed; otherwise he shall be out of the service."

Considering section 232 of the charter, it is obvious that petitioner must rely upon that part of the first

clause which permits the commission to "allow a provisional appointment." She, therefore, contends that if her service is satisfactory for six months she "shall be permanently appointed" under section 234, without the necessity of an examination. Assuming she is a provisional appointee, which we do not concede, such reasoning fails to take into consideration the distinction we have recognized between provisional and probationary appointments. In her petition she states that the notice of dismissal received by her April 1, 1936, was considered an absolute discharge by the manager of safety and excise and by the civil service commission. In other words, the commission approved her dismissal. On this point we have held, "He might be removed by the secretary of state [the appointing officer] at any time with the approval of the commission * * *." *State Civil Service Commission v. Cummings,* 83 Colo. 379, 383, 265 Pac. 687. It is obvious that to permit a permanent appointment where the provisional appointee has not taken a competitive examination would defeat the very purpose of the merit system.

On the other hand, before one may become a probationary appointee he must have taken an examination, received a passing grade and have been placed on the eligible list. Said section 234, supra, therefore, can have no application to one who has never taken an examination. "Plaintiff came within the classified service only when she took and passed the civil service examination, and accepted employment thereunder, as a probationary appointee." *Sowers v. Pitcher,* 63 Colo. 139, 142, 165 Pac. 253; *Milliken v. Zarnow,* 95 Colo. 170, 177, 34 P. (2d) 84.

It also appears from petitioner's testimony that when she was reemployed in 1932 she was paid, with others in like capacity, $125 a month, instead of $150 a month, fixed by the charter as the salary to be paid a police matron. The record discloses also that Mrs. Norris had been appointed matron after having taken the examination and having been certified to the position. That only

one matron within the classified service may be appointed under section 319 of the charter is obvious, because the word "matron" is in the singular, whereas all others are mentioned in the plural where more than one is intended. Anyone else serving in that capacity falls within the general category of "other employees," as set forth in section 129 of the charter. The petitioner was merely an employee of the department, and not within the classified service.

As to Exhibit A, upon which petitioner relies, "it would appear that the action of the appointing power, as evidenced by this exhibit, was ill-advised and without effect. Positions in the department, under civil service, cannot be so bartered away or bargained for. Public policy forbids." *Milliken v. Menser,* 96 Colo. 256, 261, 41 P. (2d) 303. While the facts in that case are not identical with those in the case at bar, the language is appropriate. As the trial court observed, "There is no estoppel against the general public because officials have not complied with the law, and a petitioner stands no better in court even if she received her appointment in an illegal manner."

We conclude the motion for nonsuit was properly sustained, and that whether petitioner was a provisional appointee, or a mere employee, she was subject to dismissal without a hearing.

Judgment affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Burke concur.