**Trenton ARTHUR, Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF DENVER, Denver Civil Service Commission, and Denver Fire Department, Defendants–Appellees.**

No. 07CA1628.

Colorado Court of Appeals,
Div. IV.

Nov. 26, 2008.

Karen Schaefer Buck, Denver, Colorado, for Plaintiff–Appellant.

David R. Fine, City Attorney, Robert D. Nespor, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge LICHTENSTEIN.

Plaintiff, Trenton Arthur, appeals the trial court's summary judgment in favor of defendants, the City and County of Denver, Denver Civil Service Commission (Commission), and the Denver Fire Department.

We reverse and remand with directions for entry of judgment in favor of Arthur.

## I. Facts

The parties agree on the following facts. Arthur applied for a firefighter position with the City and County of Denver. On May 1, 2006, as part of the application process, he took an entrance exam administered by the Commission. Arthur requested veterans' preference points be applied to his entrance exam, and he submitted a copy of his DD–214, "Certificate of Release or Discharge from Active Duty," to support his request. The Commission informed Arthur that it was unable to grant his preference points request because his DD–214 did not indicate he had been authorized to receive a campaign badge for preference consideration. Thus, his request for five-point preference was denied. Without five-point preference, Arthur did not meet the criteria for second round interviews.

Arthur appealed the Commission's denial of his five-point preference request to the district court, where each party moved for summary judgment. He contended he was eligible for preference because he served on active duty during Operation Iraqi Freedom, from April 23, 2002 through June 15, 2004. The Commission argued Arthur's preference eligibility under the Colorado Constitution was properly based only on whether he had been authorized to receive a qualifying campaign badge. The trial court granted summary judgment in favor of defendants after finding that Arthur had not provided sufficient proof of his qualification for veterans' preference pursuant to article XII, section 15.

This appeal followed.

## II. Standard of Review

We review a summary judgment de novo. *See* C.R.C.P. 56; *A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo.2005).

■ Interpreting a constitutional provision is a question of law that we review de novo. *Rocky Mountain Animal Def. v. Colo. Div.*

*of Wildlife,* 100 P.3d 508, 513 (Colo.App. 2004).

### III. Colorado Constitution

Arthur contends the trial court erred in finding that he had not provided sufficient proof with his application that he qualified to receive veterans' preference under the Colorado Constitution and further erred in granting defendants' motion for summary judgment. We agree.

■ To properly review the grant of summary judgment in this case, we must interpret article XII, section 15(1)(b) of the Colorado Constitution. Article XII, section 15, titled "Veterans' preference," sets forth a system for granting preference to veterans in hiring within the personnel systems of the state and its political subdivisions. *Kennedy v. Bd. of County Comm'rs,* 776 P.2d 1159, 1162 (Colo.App.1989). Subsection (1)(b) provides:

> Five points shall be added to the passing grade of each candidate on each such examination, except any promotional examination, who is separated under honorable conditions and who, other than for training purposes, (i) served in any branch of the armed forces of the United States during any period of any declared war or any undeclared war or other armed hostilities against an armed foreign enemy, or (ii) served on active duty in any such branch in any campaign or expedition for which a campaign badge is authorized.

Colo. Const. art. XII, § 15(1)(b).

The parties agree that Arthur was not authorized to receive a preference eligible campaign badge pursuant to subsection (1)(b)(ii). Arthur contends only that he served during an "undeclared war or other armed hostilities against an armed foreign enemy," pursuant to section 15(1)(b)(i). This portion of section 15 was adopted as a constitutional amendment by popular vote in 1970.

■ While the language of section 15(1)(b) indicates a preference for veterans, it does not define "any undeclared war or other armed hostilities against an armed foreign enemy." In construing constitutional terms, we adhere to the well-established rules of statutory construction. Because definitions for the above terms are not given in the state constitution, "[o]ur primary task is to 'ascertain and give effect to the intent of those who adopted [the constitutional amendment].'" *Tivolino Teller House, Inc. v. Fagan,* 926 P.2d 1208, 1211 (Colo.1996) (quoting *Urbish v. Lamm,* 761 P.2d 756, 760 (Colo. 1988)). More specifically, because the provision was adopted by popular vote, "we must consider the intent of the voters enacting [it]." *Id.*

In doing so, we find helpful an analysis of the 1970 ballot proposals published by the Legislative Council of the Colorado General Assembly. The Council's analysis briefly describes the intent behind implementing veterans' preference in section 15(1)(b):

> There has been dissatisfaction in recent years that the current [veterans' preference] provision is not broad enough to cover veterans of the Korean or Vietnamese conflicts. The proposed amendment would extend the provision so that these veterans *and veterans of similar conflicts* would be covered along with veterans of declared wars such as World Wars I and II.
>
> . . . .
>
> The proposed amendment would extend veterans' preference rights to veterans of Korea, Vietnam, *and future armed conflicts,* thus eliminating this inequity.

Colo. Legislative Council, Research Pub. No. 151, *An Analysis of 1970 Ballot Proposals* 11, 13 (1970)(emphasis added).

■ Although we are not bound by this analysis, it provides useful insight into the Colorado electorate's understanding of how the state would implement this constitutional amendment. *See Tivolino,* 926 P.2d at 1214. The analysis indicates the voters of Colorado intended to expand the definition of a preference eligible veteran beyond that of a person who served in World Wars I or II. To give preference to veterans who served during the Korean and Vietnamese conflicts, the amendment to section 15 added consideration for those who served in "*any* period of *any* declared war or *any* undeclared war or other armed hostilities against an armed foreign

enemy" (emphasis added). The voters intended this article to reward veterans for their service, and we construe its terms liberally. *Perry v. O'Farrell*, 120 Colo. 561, 568, 212 P.2d 848, 851 (1949). There is no indication that the voters intended "any undeclared war or other armed hostilities against an armed foreign enemy" to be solely defined by the Korean and Vietnamese conflicts, as defendants assert. On the contrary, the amendment, together with the Legislative Council's analysis, indicates the voters intended "any undeclared war or other armed hostilities against an armed foreign enemy" to be flexibly defined to give veterans of future armed conflicts hiring preference as reward for their service.

### IV. Application of "Veterans' Preference"

The City and County of Denver must comply with section 15. Colo. Const. art. XII, § 15(1)(a); Colo. Const. art. XX; § 29-5.5-104, C.R.S.2008. Under the Colorado Constitution, the City and County of Denver must "implement the provisions of [section 15] to assure that all persons entitled to added points and preference in examinations and retention shall enjoy their full privileges and rights granted by [section 15]." Colo. Const. art. XII, § 15(4). As a result, the Commission implemented Rule 5, which provides:

> Veterans preference points shall be awarded pursuant to Article XII, Section 15 of the Constitution of the State of Colorado. Applicants must provide a copy of their DD–214 . . . to the Commission for veteran preference point consideration. . . .

Denver Civil Serv. Comm'n Rule 5.

To comply with the Colorado Constitution, the Commission follows state personnel guidelines (Guidelines), which incorporate the U.S. Congress's definition of active duty service qualifying for veterans' preference. *See* Colorado Department of Personnel and Administration, Division of Human Resources, *Technical Assistance—Veterans, Active Military, and National Disaster Response Personnel.*

The Guidelines in effect when Arthur sought veterans' preference had not been updated to include "any undeclared war or other armed hostilities against an armed foreign enemy" that took place after January 2, 1992. Guidelines 1–2 & Entitlement to Veteran's Preference (chart) (2005).

 While we give deference to the reasonable interpretations of law given by an administrative agency charged with its administration and enforcement, we are not bound by an agency's interpretation. *North Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct,* 914 P.2d 902, 907 (Colo. 1996); *El Paso County Bd. of Equalization v. Craddock,* 850 P.2d 702, 705 (Colo.1993); *Urbish,* 761 P.2d at 761.

### V. Discussion

 We conclude that the conflict during which Arthur served was a period of undeclared war or other armed hostilities within the meaning of article XII, section 15(1)(b). We reach this conclusion by construction of this constitutional provision, together with our review of state and federal sources.

As noted above, article XII, section 15 of the Colorado Constitution is intended to be flexibly interpreted to give veterans of future armed conflicts hiring preference as reward for their service. The lack of updated language in the Guidelines cannot be relied on to defeat constitutional intent. Moreover, the version of the Guidelines in effect at the time of Arthur's application provided that every attempt is made to keep the guidelines updated with federal definitions of service dates "used in awarding veterans' preference eligibility within the state personnel system." *See* Guidelines 11 (2005).

Because the Colorado Constitution's grant of preference points is premised on federal military service, we deem the definition of qualifying service in the federal veterans' preference statute, 5 U.S.C. § 2108, to be the most persuasive authority in construing this constitutional provision.

Subsection (1)(D) of that statute provides that a person qualifies for veterans' preference if he or she (1) served on active duty for a period of more than 180 days, any part of which occurred during the period beginning on September 11, 2001, and ending on the

date prescribed by Presidential proclamation or by law as the last date of Operation Iraqi Freedom, and (2) has been discharged or released from active duty under honorable conditions. 5 U.S.C. § 2108(1)(D) (effective Jan. 6, 2006).

We conclude that the persons enumerated in 5 U.S.C. § 2108(1)(D) are among those who were intended to benefit from the provisions of article XII, section 15(1)(b) of the Colorado Constitution, and therefore construe those persons to include those who fought in a period of undeclared war or other armed hostilities, within the meaning of section 15(1)(b). This construction comports with the voters' intent that the amendment to the Colorado Constitution reward veterans of future armed conflicts for their service.

The Commission argues that the federal definitions apply only to federal employment matters and the U.S. Congress has not preempted the power of a state to grant civil service preference by requiring states to follow its federal designation of veterans' preference eligibility. *See, e.g., Brown v. State,* 115 N.J.Super. 348, 279 A.2d 872, 873 (App. Div.1971). While we agree that Congress has not preempted state power in this matter, in the absence of any definition of "undeclared war or other armed hostilities against an armed foreign enemy" in the Constitution or any state statute, we find the federal definition of qualifying service to be the most

persuasive authority, where, as here, the Colorado Constitution bases its veterans' preference on federal military service.

Arthur's DD–214, which is conclusive proof of his service, indicates he served on active duty in the United States Air Force from April 23, 2002 through June 15, 2004, and received an honorable discharge. *See Bingham v. Bach,* 151 Colo. 332, 336, 377 P.2d 741, 744 (1963). Thus, Arthur's active duty service brings him within the definition of a preference eligible veteran.

## VI. Conclusion

Upon considering the intent of the voters in adopting section 15, we conclude that Arthur was entitled to veterans' preference based on his service reflected in his DD–214.

Summary judgment is reversed, and because the facts necessary to resolve the issue are undisputed, the case is remanded with directions for entry of summary judgment in favor of Arthur.

Judge VOGT and Judge TERRY concur.